**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **MORGAN ENGLISH,** | )( | **CIVIL ACTION NO.:1:17-cv-219SS** |
| | )( | |
| *Plaintiff,* | )( | |
| **vs.** | )( | **(JURY TRIAL)** |
| | )( | |
| **CITY OF WACO, TEXAS;** | )( | |
| **MCLENNAN COUNTY, TEXAS;** | )( | |
| **BRENT STROMAN,** *Individually;* | )( | |
| **MANUEL CHAVEZ,** *Individually;* | )( | |
| **ABELINO REYNA,** *Individually;* | )( | |
| **PATRICK SWANTON,** *Individually,* | | |
| **and JOHN DOES,** *Individually,* | )( | |
| | )( | |
| *Defendants.* | )( | **AMENDED ORIGINAL COMPLAINT** |

## PLAINTIFF'S 1st AMENDED ORIGINAL COMPLAINT[1]

**TO THE HONORABLE JUDGE OF THE COURT:**

NOW COMES Plaintiff MORGAN ENGLISH and amends her complaint as a matter of course adding facts and causes of action pursuant to Rule 15(a)(1)(B) complaining of the CITY OF WACO, TEXAS, MCLENNAN COUNTY, TEXAS, BRENT STROMAN, INDIVIDUALLY, MANUAEL CHAVEZ, INDIVIDUALLY, ABELINO REYNA, INDIVIDUALLY, and PATRICK SWANTON, INDIVIDUALLY will show the Court the following:

## INTRODUCTION

1.      This case involves a highly publicized 1st degree felony with one hundred seventy-

---

[1] Plaintiff is amending her complaint as a response to defendants' motions to dismiss filed May 2, 2017 and May 4, 2017.

seven (177) suspects arrested involving numerous homicides. One of those arrested was the law-abiding, cooperative Morgan English, whom authorities had no individualized probable cause to suspect. Morgan was merely present at a restaurant for a regularly held legal meeting of motorcyclists to discuss Texas legislation of interest to motorcyclists among other issues. Morgan was jailed for 16 days, and saddled with a $1,000,000.00 bond. The case against her was eventually dropped after the Grand Jury did not indict her.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, 42 U.S.C. §§ 1983 and 1988 and supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear Plaintiff's state law claims, if any. Venue is proper in this Court, under 28 U.S.C. § 1391(b), because the incident at issue took place in McLennan County, Texas within the U.S. Western District of Texas.

## PARTIES

3.      Plaintiff Morgan English ("Morgan" or "Plaintiff") is a resident of Brazos County, Texas.

4.      Defendant Patrick Swanton ("Sgt. Swanton") is the police spokesperson and sergeant for the Waco Police Department and is being sued in his individual capacity and he may be served with process by serving him at 3115 Pine Ave., Waco, Texas 76708 or wherever he is found.

5.      Defendant Brent Stroman ("Chief Stroman") is the Chief of Police of the City of Waco, Texas and is sued in his individual capacity. Chief Stroman and has been served with

process at his place of business in the Waco Police Department, 3115 Pine Avenue, Waco, Texas, 76708 or wherever he was found.

6.      Defendant Manuel Chavez ("Detective Chavez") is a police officer employed by the City of Waco, Texas and is sued in his individual capacity. Detective Stroman has been served with process at the Waco Police Department, located at 3115 Pine Avenue, Waco, Texas, 76708 or wherever he was found.

7.      Defendant Abelino Reyna ("District Attorney Reyna") is the elected District Attorney of McLennan County, Texas and is sued in his individual capacity. District Attorney Reyna was served with process at 219 N. 6th Street, Waco, Texas 76701 or wherever he was found.

8.      Defendant City of Waco, Texas is a municipality existing under the laws of the State of Texas and was served with process by serving the City Secretary or Mayor at 300 Austin Avenue, Waco, Texas 76701 or wherever he was found.

9.      Defendant McLennan County, Texas is a governmental unit existing under the laws of the State of Texas and was served with process by serving the County Judge at 501 Washington Avenue, Waco, Texas 76701 or wherever he was found.

10.     John Does are such governmental employees involved in the arrest and prosecution of plaintiff that have not as yet been identified.


### **FACTS**

11.     Morgan ("Morgan") English, 32, is from Brenham, Texas and is married to William ("William") English and they have one child. Prior to the events illustrated herein Morgan had never been arrested for any crime in her life. William has a single, old misdemeanor conviction. Morgan was a bank teller for Chase Bank. Morgan is a graduate of Stephen F. Austin University

where she was a Zeta Tau Alpha sorority member. William is a military veteran, has an associate's degree in business management, and was a welder at the time.

12.     On May 17, 2015, the Englishes traveled in their car, with two friends, to a meeting of many motorcycle clubs in Waco, Texas at a chain restaurant ("Twin Peaks"). The meeting was a regular quarterly event of the Coalition of Clubs and Independents ("COCI") to discuss pending motorcycle-related legislation and other topics of interest to motorcyclists.

13.     The COCI is a non-profit organization of motorcyclists whose mission is to promote rights of motorcyclists and safety issues in Texas. COCI meetings are held at various locations in Texas and are open to all motorcyclists.

14.     The May 17, 2015 COCI meeting in Waco had been scheduled several weeks in advance, and was posted publicly on the COCI website prior to the date of the event. Bikers from numerous motorcycle clubs from all over the state were expected to attend and did attend.

15.     Unbeknownst to Morgan and Williams several law enforcement agencies had been tracking animosity between the Cossacks and Bandidos motorcycle clubs and had intelligence that there may be a confrontation at the COC meeting. The Englishes knew nothing of this. Neither Morgan nor her husband are a Bandido or a Cossack nor are they a member of any criminal street gang, and Morgan did not wear any insignia connected with the Bandidos or Cossacks. Upon the Englishes' arrival, many law enforcement officers were in cars in the Twin Peaks parking lot and in the parking lot of an adjacent business.

16.     The Englishes parked a good distance away from the Twin Peaks entrance and began walking to the restaurant. Before they entered Twin Peaks they heard a gunshot and then many more shots rang out as they took cover. When the smoke cleared many Cossacks and a Bandido lay dead and many others were wounded. While some of the injuries were inflicted by

the Bandidos and Cossacks, most deaths were from law enforcement gunfire. Morgan and William did not strike, shoot, or assault anyone, or attempt to do so, nor did they encourage others to take such actions. They committed no crimes nor was there probable cause they committed any crime.

17.     After the shootout law enforcement spoke with Morgan and both she and William freely answered all questions without hesitation. Nothing they said indicated they were involved in any crime or the dispute between the Cossacks and Bandidos. They were searched and they had no weapons or other contraband on them. Despite Morgan having had nothing to do with the shootout and a complete lack of any evidence against her, Morgan was arrested for Engaging in Organized Criminal Activity with the Intent to Commit or Conspire to Commit Murder, Capital Murder, or Aggravated Assault (1st degree felony-up to 99 years in prison), and saddled with a $1,000,000.00 (one million dollar) bail bond. The City of Waco and the McLennan County District Attorney's office sent out press releases and held press conferences identifying the jailed suspects including Morgan and the news traveled quickly around the World. Her name and photograph, and the crime she was arrested for, were posted on the internet where they quickly circulated.

18.     Although there was no evidence to support probable cause that Morgan had committed a crime Defendants Stroman, Chavez, and Reyna decided that she would be arrested and charged with 1st Degree Felony Engaging in Organized Criminal Activity.

19.     In the absence of particularized evidence to establish probable cause against Plaintiff, Defendants caused an affidavit to be issued and sworn to by Defendant Chavez that contained material misrepresentations. Specifically, the affidavit alleges that Plaintiff was a member of a criminal street gang and that she regularly associates in the commission of criminal activities. Morgan is neither a member of a criminal street gang nor does she regularly associate in the commission of criminal activities. Morgan denies the truthfulness or accuracy of either

PLAINTIFF'S 1st AMENDED ORIGINAL COMPLAINT                    **Page 5**

statement. Defendants' conduct of alleging these "facts" against Plaintiff when they, in fact, had no such evidence can only be construed as deliberate indifference, willful, intentional, and/or reckless.

20.     Twin Peaks' video surveillance as well as defendants' own video evidence freely available to, and quickly obtained by, defendants show no illegal activity by Morgan or William or the two others who rode with them in the car. Morgan remained in jail for 16 days until bonding out and was held over for trial.

21.     Waco police spokesman Sergeant Patrick stated "Police, anticipating problems, came to the bar in advance. 'We knew there would be trouble at this biker event,' Swanton said, adding, 'What happened here today could have been avoided." Defendant Swanton also ordered arrests of many of the plaintiffs and declared chains and legal knives were illegal supporting arrests including a ves chain of plaintiffs. At one point he stated "You are all under arrest." and  "You are all going to fucking jail!" Defendant Sergeant Swanton later gave an interview where he deliberately lied to the media about all the Plaintiffs were involved in the fight and that they did not cooperate with police. He also falsely stated police were shot at and that's why they fired.

22.     The charges against Morgan (and William) were dropped as there was no probable cause for the arrest or prosecution. No indictment issued, and it does not appear her case was even presented to the Grand Jury.

23.     Defendant Chavez is a detective in the Special Crimes Unit of the WPD. On May 17, 2015, he was the on-call investigator and as a result was called to the scene as the lead investigator of the Twin Peaks incident.

24.     Defendant Reyna, the elected McLennan County District Attorney, First Assistant District Attorney Michael Jarrett and Assistant District Attorney Mark Parker were on scene after

the incident investigating the shooting, along with law enforcement officials from numerous local and state agencies. Defendant Reyna has publicly acknowledged he took the unusual step of assisting law enforcement officials and was involved in the actual investigation of the incident.

25.     After several hours, all individuals present for the COCI meeting were transported to the Waco Convention Center for interviews. For the remainder of the day and night, WPD detectives, Texas Rangers, and DPS special agents conducted interviews of those individuals. Initially, detainees were told they were being questioned and not arrested and therefore were not Mirandized. However, at approximately 7:30 p.m. Defendant Chavez reversed course and instructed detectives and investigators to read the Miranda[2] warnings to anyone wearing a patch indicating support for the Bandidos or Cossacks, or who in any way indicated support for either the Bandidos or Cossacks because they would be charged with engaging in organized crime pursuant to the affidavit the District Attorney's office had provided.

26     Throughout the interviews, a common theme became evident--the detained individuals were merely present for a meeting, to visit with friends, eat food, and socialize with other motorcycle enthusiasts. During the interviews, it was learned that most were nowhere near the shooting; many had just arrived at the restaurant; and none were aware of a prearranged plan of violence. It was also learned that the vast majority of arrestees immediately took cover at the outset of the gunfire, and did not in any way participate in or encourage the violence.  Video evidence in the possession of law enforcement, and reviewed within hours of the incident, clearly demonstrates the vast majority of those present, including Plaintiff, appeared surprised and confused on hearing the initial gunfire, and further, clearly shows the vast majority of those present, including Plaintiff, ran away from the disturbance, not toward it. The video evidence

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

clearly and unambiguously proves the complete lack of involvement in the disturbance of the vast majority of those arrested, including Plaintiff.

27.     Investigators, many of whom were from the Austin division of DPS, were providing the information learned during interviews directly to Defendant Stroman, Defendant Reyna, and unknown DPS official(s).

28.     Documents related to this incident clearly establish that a very specific plan for the release of most individuals was in the works just prior to the decision to arrest everyone and charge each person with the first-degree felony of Engaging in Organized Criminal Activity with the Intent to Commit or Conspire to Commit Murder, Capital Murder, or Aggravated Assault.

## DEFENDANTS' DECISION TO ARREST

29.     Defendant Chavez ordered all the investigators to stop their interviews at approximately 8:30 p.m. because Defendant Reyna had called a meeting. From approximately 9:00 p.m. to 10:30 p.m., Defendants Stroman, Chavez, Reyna, and others met regarding the incident. Soon thereafter, investigators were informed that Defendants had decided to arrest all motorcyclists that met certain criteria, and to charge each with the offense of Engaging in Organized Criminal Activity.

30.     Defendant Stroman and/or Reyna provided an arrest criteria for all detectives to follow in compiling the list of individuals to be arrested. Documents related to the mass arrests prove that Defendants made the determination to arrest based on motorcycle club association and/or clothing, patches, key chains, etc. that Defendants arbitrarily decided reflected "support" for either the Bandidos or the Cossacks.  In fact, much of the clothing, patches, key chains, etc. that Defendants claim signifies gang membership was, and remains, available for public purchase

over the internet, at motorcycle gatherings, and in some retail stores throughout Texas.

31.     Defendant Stroman has publicly acknowledged his responsibility in the decision for the mass arrest, which included Plaintiff, as described more fully below. Documents related to the incident and his own prior testimony clearly establish Defendant Reyna's responsibility for the ill-fated decision as well. In a press conference following the mass arrests, Stroman verbally stated he was responsible for the decision to make the mass arrests.

32.     Despite possessing video from numerous angles showing the complete lack of involvement of most of those arrested and hours and hours of interviews with the arrested individuals in which no evidence of a conspiracy was uncovered to support their "theory" of pre-planned violence, Defendants willfully, intentionally, and recklessly charged 177 individuals with the identical first-degree felony of Engaging in Organized Criminal Activity with the Intent to Commit or Conspire to Commit Murder, Capital Murder, or Aggravated Assault. To clarify, the decision to arrest and charge Plaintiff and the other individuals with crimes despite video evidence, and statements from hundreds of witnesses, that directly contradict the existence of probable cause, or any reasonable belief thereof, can only be characterized as willful, intentional, and/or reckless. Based on the very specific information known by Defendants at the time their decision was made to arrest, including CLEAR and UNAMBIGUOUS video evidence directly at odds with Defendants' theory of a mass criminal enterprise engaging in organized crime, it is impossible to believe Defendants' conduct and decisions were anything other than willful, intentional, and/or reckless. Defendants' decision to ignore contrary and exculpatory evidence in favor of a theory unsupported by the facts or the law was consciously made and therefore willful, intentional, and/or reckless. Investigative reports and DPS witness summaries provide specific proof of the facts alleged herein.

## THE AFFIDAVIT TO OBTAIN AN ARREST WARRANT

33.     On May 18, 2015, the day following the incident at Twin Peaks, Defendants caused a general warrant, as that term has been defined by the United States Supreme Court, to be used for the purpose of obtaining arrest warrants for each of the 177 individuals, including Plaintiff.

34.     Despite the United States Constitution requiring a particularized showing of facts against an individual before a warrant can issue, an identical fill-in-the-name affidavit (hereinafter "affidavit" or "probable cause affidavit," attached hereto as Exhibit 1) was used as the basis for establishing probable cause for each of the arrested individuals.

35.     It is indisputable that the affidavit in question does not set forth particularized facts against Plaintiff that would in any way establish probable cause.  Assuming arguendo that the probable cause affidavit contains specific allegations of fact against Plaintiff, each such allegation is false and untrue and was signed without a reasonable belief that such allegations were true.

36.     The affidavit fails to set forth any specific facts against Plaintiff that, if believed, would constitute probable cause.  Even if the claim that Plaintiff was "a member of a criminal street gang" was true, and it is not, the affidavit lacks any factual assertions specific to Plaintiff upon which a finding of probable cause could be based.

37.     Defendant Chavez has acknowledged that he read the template affidavit and inserted names of individuals based on a list he was provided.  Chavez has testified in at least one hearing that he did not, in fact, possess personal knowledge of all the assertions made in the affidavit. He has further testified to a lack of knowledge concerning individual arrestees' involvement in the incident.

38.     Defendant Chavez did not question the template affidavit or the basis of the

criminal charge even though he had already begun the process of overseeing arrangements to release all of the detainees. Defendant Chavez swore to 177 template affidavits *en masse* – that is, he swore under oath that the stack before him was true and correct – and is the sole affiant for all 177 affidavits. Chavez swore under oath he had personal knowledge of the information contained therein, even though he did not. Having read the affidavit, Defendant Chavez knew he did not have personal knowledge as to the particular facts of any one person, including Plaintiff. Chavez knew the affidavit was open-ended, false, and misleading in a material manner, yet he presented it to Magistrate Peterson for the purpose of obtaining arrest warrants, including Plaintiff's.

39.     The template affidavit, sworn to by Defendant Chavez, is wholly lacking in probable cause, and instead is filled with conclusory, inaccurate statements and/or background facts. Plain and simple, the affidavit does not indicate any particular facts that Plaintiff was even aware of tension that might have existed between certain individuals that were present at Twin Peaks. The affidavit does not assert how, when, where, or with whom Plaintiff conspired or to any facts that could be construed as a decision by Plaintiff to engage in an organized criminal activity. The affidavit is devoid of any facts describing any criminal activity in which Plaintiff was believed to be involved. The affidavit falsely states Plaintiff is "a member of a criminal street gang." That statement is categorically false. It is an indisputable fact that Defendants did not possess any reliable particularized information to indicate Plaintiff herself was a member of a criminal street gang on or before the date such fact was sworn to by Defendant Chavez. Plaintiff was not, and never has been, a member of a criminal street gang. During all relevant time periods, Plaintiff was not associated with any organization that meets any known definition of "criminal street gang." Plaintiff was not, and never has agreed to be in a gang of any type, much less a "criminal street gang." Plaintiff is a law-abiding citizen who associates with other law-abiding citizens and in no

way, shape, or form is a member of a "criminal street gang." The motorcycle club with which Plaintiff was associated at the time of this incident was not included on any law enforcement lists as a "criminal street gang."  Finally, no law enforcement list or database showed Plaintiff to be a "member of a criminal street gang" at the time of the incident or on the date on which Defendant Chavez swore to that fact for the purpose of establishing probable cause.

40.     Defendants Swanton, Chavez, Stroman, and Reyna all knew the exact wording of the probable cause affidavit and knew at the time it was sworn to and presented to the magistrate that it contained false statements.  They knew the affidavit contained false and misleading statements because they were involved in every aspect of the investigation from the beginning, and knew or should have known that no evidence existed to support the affidavit, that neither Plaintiff nor her motorcycle club were identified on any law enforcement database at the time of the incident in question as being in a criminal street gang, or a member of a criminal street gang. On the date that Plaintiff was arrested and falsely charged, Defendants Chavez, Stroman, and Reyna all were privy to DPS gang databases and knew or should have known that none identified Plaintiff as a member of a criminal street gang.  Nonetheless, each Defendant allowed the false statement to become a central basis for the arrest and detention of Plaintiff. Defendants Chavez, Stroman, and Reyna knew that Plaintiff had no identification on her clothing or elsewhere that she was affiliated with the Bandidos, Cossacks or any criminal street gang, that she had no weapons, that she had no criminal history, that she did not assault or attempt to assault anyone, that she fully answered all  police questions, and that she knew nothing about any animosity between bikers, however, chose to leave all that out of the affidavit so that Justice of the Peace Peterson would sign the arrest warrant. At the time defendants Chavez, Stroman, and Reyna presented the affidavit to JP Peterson they knew there was not probable cause to arrest plaintiff.

41.     Further, Defendants Swanton, Chavez, Stroman, and Reyna all knew, or should have known, that Plaintiff was not engaging in criminal conduct at Twin Peaks since the video evidence in their possession CLEARLY and UNAMBIGUOUSLY proves that Plaintiff did not participate in, nor did she encourage, the disturbance that escalated into violence.  In fact, the video evidence proves that Plaintiff was not involved, yet the Defendants acted in direct contravention of the video evidence and caused Plaintiff's constitutional rights to be violated.  Each Defendant was certainly aware that neither he, nor any other law enforcement officer, possessed knowledge that Plaintiff was a member of a criminal street gang, or that Plaintiff regularly associated in the commission of criminal activities.

42.     In the aftermath of the incident at Twin Peaks, Defendants apparently concluded the Bill of Rights to the U.S. Constitution ceased to apply, and could be ignored given what they perceived as an immediate need to announce the reestablishment of law and order in their town.

43.     Compounding Defendants' gross violations of civil rights, an identical one million dollars ($1,000,000.00) bail was set for each of the 177 detained individuals, including Plaintiff, despite the Eighth Amendment to the U. S. Constitution's clear mandate that "excessive bail shall not be required, nor excessive fines imposed..." As a result of the foregoing, Plaintiff was wrongfully incarcerated for 16 days following her wrongful arrest.

## MISSTATEMENTS AND EXAGGERATIONS TO THE MEDIA

44.     Within hours of the Twin Peaks incident, information was provided to the media that was inaccurate, exaggerated, and highly misleading. Defendant Stroman allowed WPD representatives to set forth a narrative that was inaccurate in many respects. The "shootout between outlaw motorcycle gangs" theme that continues to be trumpeted is patently false. Perpetuating the

narrative has caused irreparable harm to the reputations of the many individuals, including Plaintiff, who had nothing to do with the fatalities and injuries.

45.     WPD's intent, under Defendant Stroman, to create a false picture of the event is most evident in the manner that guns and knives were displayed to the media following the incident. The majority of the knives confiscated would not be considered illegal under § 46.02 of the Texas Penal Code, and were voluntarily relinquished upon requests from law enforcement soon after the shootings. Notwithstanding an individual's right to carry a legal knife, the knives were displayed to the media with blades extended in an effort to appear as menacing as possible.

46.     A similar storyline emerged regarding the number of guns seized after the incident, which was grossly overstated in initial reports. Police representatives omitted the truth that many of these guns were found outside the restaurant following the incident, secured safely on motorcycles or in other vehicles, as permitted by Texas law.

47.     Perhaps the most misleading characterization of the events was made days after the incident by Defendant Reyna when he implied that those arrested were guilty because "if they're victims, then they shouldn't have any problem coming to law enforcement and cooperating... and, at least in the first round of interviews, we ain't getting that." This is blatantly false. A review of investigators' records documenting the interviews that were conducted with the detained bikers clearly establishes that the vast majority, including Plaintiff, were completely cooperative during interviews, and voluntarily submitted to questioning and requests for forensics (volunteering DNA samples and gunshot residue testing) from law enforcement. Defendant Reyna knew of these facts at the time he made the above described public statement. Since the outset, law enforcement's narrative of the event as told to the public bears little resemblance to the actual facts.

**THE INDICTMENTS**

48.     On November 10, 2015, a McLennan County Grand Jury indicted 105 other individuals for the crime of Engaging in Organized Criminal Activity with the Intent to Commit or Conspire to Commit Murder, Capital Murder, or Aggravated Assault.  The Grand Jury convened on March 23, 2016 for half a day and returned another 48 indictments. To date, the Grand Jury has returned indictments on 155 of the 155 cases that have been presented. No witnesses were called to testify during the Grand Jury deliberation of March 23, 2016. The Plaintiff was not indicted and her case was not even presented to a Grand Jury. As a practical matter, under Texas law, this caused the case against her to be dismissed. Yet Defendant Reyna, and those under his supervision, persisted in assailing the Plaintiff in the media, saying that the case against her was ongoing, and causing her reputation to remain clouded.

**V. CAUSES OF ACTION**

**42 U.S.C. § 1983 – 4th Amendment Violation pursuant to _Malley v. Briggs_**

49.     Paragraphs 1-48 are incorporated herein by reference.

50.     Plaintiff had a clearly established Constitutional right to be free from unlawful arrest. As a direct result of Defendants' conduct, Plaintiff was falsely arrested and charged with Engaging in Organized Criminal Activity, despite the absence of probable cause to establish that she had committed a crime. Defendants' conduct, as described above, deprived Plaintiff of her right to be secure in her person against unreasonable seizure, in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

51.     The Fourth Amendment of the U.S. Constitution states:

*"[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."* (Emphasis added.)

52.     As the Supreme Court of the United States has plainly stated, *"[w]here the standard is probable cause, a... seizure of a person must be supported by probable cause particularized with respect to that person." Ybarra v. Illinois,* 444 U.S. 85, 91 (1979).[3]

53.     Plaintiff pleads that Defendants Stroman, Reyna and Swanton knowingly and intentionally, or with reckless disregard for the truth, caused a facially deficient, fill-in-the-name template affidavit, completely lacking in particularized facts against Plaintiff to be presented to the Magistrate Judge for the purpose of obtaining an arrest warrant.[4]

54.     Further, Defendant Chavez is liable to Plaintiff because he knowingly and intentionally, or with reckless disregard for the truth, presented a facially deficient, fill-in-the-name template affidavit, completely lacking in particularized facts against Plaintiff to be presented to the Magistrate Judge for the purpose of obtaining an arrest warrant. A police officer is not entitled to qualified immunity when he submits a warrant application that is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. *Malley v. Briggs*, 475 U.S. 335, 345 (1986).  As noted in footnote 4, this principle has been re-established time and again.

---

[3] *See also Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("...**the belief of guilt must be particularized with respect to the person to be searched or seized.**"); *Trapper v. North Carolina*, 451 U.S. 997, 1000 (1981); *Michigan v. Summers*, 452 U.S. 692, 695, n. 4 (1981); *U.S. v. Hearn*, 563 F.3d 95, 103 (5th Cir. 2009) (quoting *Ybarra*, 444 U.S. at 91); *U.S. v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008); *Williams v. Kaufman Co.*, 352 F.3d 994, 1003 (5th Cir. 2003) (quoting *Ybarra*, 444 U.S. at 91); *Merchant v. Bauer*, 677 F.3d 656, 666 (4th Cir. 2012) ("**The Supreme Court has emphasized that '[w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.**'"); *Hawkins v. Mitchell, et al*, 983, 994 (7th Cir. 2014); *U.S. v. Ojeda-Ramos*, 455 F.3d 1178, 1181 (10th Cir. 2006) (quoting *Ybarra*, 444 U.S. at 91); *U.S. v. Guzman*, SA-13-CR-89-DAE (W.D. Tex. 2013); *Dinler v. City of New York*, 2012 WL 4513352 *6 (S.D.N.Y 2012) ("**The Fourth Amendment does not recognize guilty by association.**").
[4] See ¶ 32 and 44 *supra*, for specific, detailed allegations of Defendants' conduct and why that conduct is willful, intentional, or with reckless disregard.

The Fifth Circuit has held likewise.  No reasonable police officer or law enforcement actor could reasonably have believed the law was otherwise, or that the affidavit in question established probable cause against Plaintiff.

55.     Because the template affidavit regarding Plaintiff lacks assertions of fact that, even if true, would establish probable cause, Defendants have each, individually and as a group, violated Plaintiff's Fourth Amendment rights.

56.     "The Fourth Amendment directs that 'no Warrants shall issue, but upon probable cause... and particularly describing the place to be searched, and the persons or things to be seized.' Thus, 'open-ended' or 'general' warrants are constitutionally prohibited." *Ybarra v. Illinois,* 444 U.S. 85, 92 n. 4 (1979). It was well settled law in this country prior to May 17, 2015 that use of a general warrant application was prohibited. Defendants' actions effectively constitute the use of a general warrant prohibited by the Constitution and decades of United States Supreme Court case law. As set forth in *Malley v. Briggs*, and its progeny, the Plaintiff's Fourth Amendment rights were violated when a probable cause affidavit was presented for the purpose of obtaining an arrest warrant that was so lacking in indicia of probable cause as to render official belief in existence of probable cause "unreasonable."

57.     The affidavit, attached as **Exhibit 1** to this Complaint, is incorporated herein by reference. The plain language of the affidavit indicates that it does not contain a single particularized assertion of fact against Plaintiff that would establish a reasonable belief that Plaintiff has committed a criminal offense.  As a direct result of Defendants' conduct and actions, Plaintiff was deprived of his constitutional rights all to her damage.


### 42 U.S.C. § 1983 – 4th Amendment Violation

58.     Paragraphs 1-57 are incorporated herein by reference.

59.     In the alternative, Plaintiff pleads civil liability against Defendants based on a "*Franks*" violation. See *Franks v. Delaware,* 438 U.S. 154 (1978). See also *Hale v. Fish*, 899 F.2d 390, 400 n.3 (5th Cir. 1990). Defendants Stroman and Reyna knowingly and intentionally, or with reckless disregard for the truth, caused an affidavit against Plaintiff to be presented to the Magistrate Judge that each knew to be materially false and misleading.[5] Further, Defendant Chavez is liable to Plaintiff because he knowingly and intentionally, or with reckless disregard for the truth, swore to a probable cause affidavit against Plaintiff that he knew to be materially false and misleading, and presented it to the Magistrate Judge. Defendant Chavez swore under oath that he had personal knowledge of the information set forth in the probable cause affidavit. He did not.

60.     The affidavit falsely states that Plaintiff is "a member of a criminal street gang." That statement is categorically false. It is an indisputable fact that Defendants did not possess any reliable particularized information to indicate that Plaintiff herself was a member of a criminal street gang on or before the date such fact was sworn to by Defendant Chavez. Plaintiff was not, and never has been, a member of a criminal street gang.

61.     Further, the probable cause affidavit states, "[a]fter the altercation, the subject was apprehended at the scene, while wearing common identifying distinctive signs or symbols or had an identifiable leadership or continuously or regularly associate in the commission of criminal activities." These statements are false and misleading and were known to be false and misleading by Defendant Chavez at the time he swore to such.

62.     Defendants offer no specific facts of any nature that Plaintiff regularly associated

---

[5] See ¶ 32 and 44 *supra,* for specific, detailed allegations of Defendants' conduct and why that conduct is willful, intentional, or with reckless disregard.

in the commission of criminal activities.[6] In fact, the probable cause affidavit misstates an essential element of the definition of "criminal street gang".  Texas Penal Code sec. 71.01(d) states that "'Criminal street gang' means three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities."  There is no "or" before "who continuously or regularly . . ." The last phrase MUST be proven as an essential element of the definition.  The omission of this essential element, or language suggesting that it is not an essential element, is misleading on its face.  Since Defendant Chavez testified before the Grand Jury, it is reasonable to believe that Defendant Chavez testified consistent with his sworn affidavit. As outlined above, the Chavez affidavit contains false and materially misleading statements, or it misled the Grand Jury by suggesting that the definition of "criminal street gang" is different than actually stated in the Penal Code.

63.     Information omitted from the affidavit by Defendant Chavez would have negated probable cause. Despite a duty to include information that weighs against probable cause, Defendant Chavez knowingly and intentionally, or with reckless disregard for the truth, failed to reference the complete lack of any particularized evidence connecting Plaintiff to any criminal acts that occurred at Twin Peaks.

64.     Since at least *Franks v. Delaware*, and as re-affirmed by the Fifth Circuit *in Hale v. Fish,* police officers and law enforcement officials have known that willful, intentional, and/or reckless misrepresentations made for the purpose of establishing probable cause violate an individual's Fifth Amendment rights. As a direct result of Defendants' conduct and actions, Plaintiff was wrongfully arrested even though probable cause did not exist.

---

[6] Plaintiff categorically denies that she continuously or regularly associated in the commission of criminal activities.

## 42 U.S.C. § 1983 – 14th Amendment Violation

65.     Paragraphs 1-64 are incorporated herein by reference.

66.     If it is determined that a Fourth Amendment violation is not sustainable, Plaintiff alternatively asserts a violation of her Due Process rights under the Fourteenth Amendment to be free from unlawful arrest as a result of false and misleading statements that were made knowingly, or with reckless disregard for the truth, included in the probable cause affidavit.  The Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression.

67.     Specifically, Plaintiff has rights guaranteed by the Fourteenth Amendment not to have law enforcement deliberately fabricate evidence, including the insertion of facts in affidavits and arrest documents (and provide testimony based on those "facts" to secure an indictment), that Defendants know to be false.

68.     Here, Defendants knew there was no basis for the claim that Plaintiff was a member of a criminal street gang who committed or conspired to commit murder, capital murder, or aggravated assault. By inserting such claims in the probable cause affidavit and other official documents related to Plaintiff's arrest, Defendants violated Plaintiff's Fourteenth Amendment rights. This is conduct sufficient to shock the conscience for substantive due process purposes. The doctrine set forth by the Fifth Circuit in *Cole v. Carson*, 802 F.3d 752 (5th Cir. 2015) is hereby invoked and pled.


## EXCESSIVE BAIL

69.     Plaintiff incorporates the foregoing allegations in the foregoing paragraphs of her Complaint as if fully set forth herein and made a part hereof.

70.     The Eighth Amendment to the U.S. Constitution was adopted as part of the Bill of Rights in 1791. "Traditional right to bail before conviction permits unhampered preparation of defense, and serves to prevent infliction of punishment prior to conviction, and unless this right is preserved presumption of innocence would lose its meaning; practice of requiring bail bond or deposit of sum of money subject to forfeiture serves as additional assurance of presence of accused and bail set at higher figure than amount reasonably calculated to fulfill this purpose is "excessive" under Eight Amendment." 174 of the bikers arrested had bail set unreasonably high at ONE MILLION DOLLARS, including Plaintiff. All Defendants are liable for the violation of the Eighth Amendment.

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

71.     Plaintiff incorporates the foregoing paragraphs of her Complaint as if fully set forth herein and made a part hereof. Plaintiff would show that these state actor defendants conspired in multiple different manners together to damage plaintiff, falsely arrest plaintiff, falsely detain plaintiff, deprive her of her constitutional rights, falsely charge plaintiff, defame, slander and libel plaintiff, and cause negligent, grossly negligent and intentional acts of malfeasance upon Plaintiff. This included conspiracies to destroy her character, to take her possessions without due process of law, to arrest and detain her without due process of law, to post media alerts that she was dangerous, when they knew in fact they she was not dangerous or a criminal.  That they deliberately tortuously interfered with her job, her employer and her family to inject the most harm possible without any provocation or reason.

72.     Plaintiff was proximately injured in her job and property rights by reason of one or more violations of RICO's substantive provisions. The conduct of defendants demonstrates a

pattern of illegal conduct. The vast majority of the arrests in this matter were fraudulent and all of them were fraudulent as they related to Plaintiff. The exercise of jurisdiction over the Plaintiff to subsequently extort monies for bail bonds, local and necessary criminal counsel, threats of fines and penalties, and even the incarceration benefiting a private jail system in which the local judiciary maintains a role on the board are violative of the provisions of the RICO statute.

## LIBEL and SLANDER

73.    Plaintiff incorporates the foregoing paragraphs of her Complaint as if fully set forth herein and made a part hereof. Defendants have libeled, slandered and committed defamation of character and Intentional Infliction of Emotional Distress on the Plaintiff.  An example of the messaging pushed by the Waco PD and the DA's office is contained in a statement made by police spokesman Swanton, "A bunch of criminal element biker members that came into our community and unfortunately did just that…  This is not a bunch of doctors and dentists and lawyers riding Harleys.  These are criminals on Harley Davidsons."  Plaintiff is not what you would consider "criminal elements". She is a college graduate with a banking job and now a baby. They told the entire nation that she, who had just ridden up to the restaurant, who had no illegal weapons and who did not participate in any criminal action nor any of the violence at Twin Peaks, that she is a first degree felon guilty of causing multiple murders.

74.    These false stories have destroyed the life of plaintiff.  It was done in a premeditated manner, and done to personally harm Plaintiff as much as possible. It was done with malice and with complete disregard to their legal rights. She was slandered, libeled and defamed. "We are prepared to deal with those individuals if they come to Waco," Swanton said, adding, with a bit of Texas swagger, that "criminal biker gang members" had already "felt the

wrath of law enforcement in Waco." This was all done in a manner to inflict the maximum amount of embarrassment, ridicule, humiliation and shame and to cause each Plaintiff to suffer an immense amount of financial strain, emotional pain and stress. This conduct was grossly negligent to some degree, and for the most part intentional in nature. Plaintiff sues for all damages associated to that harm for all elements she is entitled to receive.

75.    Plaintiffs also sue for false arrest/imprisonment/unlawful restraint remedies inclusive of Title V Tx Penal Code sec. 20.02 and all related chapters.

## 42 U.S.C. § 1983 – Conspiracy

76.    Plaintiff incorporates all previous paragraphs as if fully set forth herein by reference.

77.    The aforementioned acts before, during and following the incident, Defendants Stroman, Chavez, Reyna, and Doe entered into a conspiracy to deprive Plaintiff of her right to be free from unlawful seizure and incarceration in violation of her Fourth Amendment rights, 14th Amendment, Fifth Amendment and Eighth Amendment. Defendants acted in concert either to orchestrate or to carry out the illegal seizure and cause the illegal arrest and incarceration described in this Complaint when they knew there was no probable cause to arrest Plaintiff or to charge her with the offense of Engaging in Organized Criminal Activity. Defendants are liable to Plaintiff for their violations under 42 U.S.C. § 1983.

78.    As described above, Defendants Stroman, Chavez, Reyna, and Doe(s) caused a warrant to be issued against Plaintiff based on a false or deficient probable cause affidavit that Defendants knew to be false or deficient.

79.    Defendants were aware that Chavez was swearing to false statements for the

purpose of obtaining an arrest warrant yet took no action to stop him.  In fact, as described above, they encouraged Chavez despite knowledge of video evidence that directly contradicted any reasonable belief that Plaintiff had committed a crime. Defendants Reyna and Stroman's encouragement of Chavez is evident in that Defendants Stroman and Reyna and Chavez met together on May 17 and May 18 to discuss this very issue and records indicate full knowledge and acquiescence by all Defendants. Public statements by Stroman and Reyna further confirm Defendants' awareness of the actions taken to cause Plaintiff to be arrested without probable cause. The conspiracy involved state action, as Defendants Stroman, Chavez, Reyna, and Doe acted under color of the statutes, customs, ordinances, and usage of the State of Texas.

80.    As a direct result of Defendants' illegal conduct, Plaintiff was deprived of her constitutional rights, all to her damage.

## **Defendant Reyna is not entitled to prosecutorial or qualified immunity**

81.    Defendant Reyna investigated the scene within hours of the incident, took photographs of the scene, reviewed information as it became known, and in all respects inserted himself in the role of an investigator/detective. Defendant Reyna was not acting as an advocate/prosecutor in assisting with the mere preparation of the affidavit for an arrest warrant, but rather involved himself in the investigative phase of the case prior to a determination of probable cause, and thus, is not entitled to absolute prosecutorial immunity.  To the extent Reyna provided legal advice, it was provided to police and other law enforcement officials during the investigative phase. Defendant Reyna involved himself in the decision to arrest when he called the meeting described above and changed the course of earlier decisions to release most of those detained, including Plaintiff. In fact, it was Chief Stroman and Reyna who ultimately decided to

charge each individual who met certain criteria related to club affiliation and/or clothing, patches, bumper stickers, etc. that in their minds suggested "support" for either the Bandidos or the Cossacks.

## FREEDOM OF ASSOCIATION and EXPRESSION

82.     Plaintiff incorporates all previous paragraphs as if fully set forth herein by reference.

83.     The First Amendment to the Constitution of the United States provides for freedom of association and expression. Defendants' actions violated these rights.

## POLICY/RATIFICATION

84.     The Plaintiff incorporates all previous paragraphs as if set fully set forth herein.

85.     The City of Waco and McLennan County are liable for plaintiff's Constitutional wrongs suffered as the individual defendants are the policy makers for their respective government employers.

86.     Furthermore, despite all the obvious wrongs no City of Waco or McLennan County employee has received any discipline or consequence due to their actions thereby ratifying their actions as policy of the City of Waco and McLennan County.

## VI. DAMAGES

87.     As a direct and proximate result of the acts and omissions outlined above, Plaintiff has been severely damaged. Each Defendant, acting individually, or in concert with the other Defendants, has caused Plaintiff to suffer the damages described below.

88.    Plaintiff seeks compensatory damages in an amount of $50,000,000 deemed sufficient by the trier of fact to compensate her for her damages, which includes past and future mental anguish, past and future pain and suffering, past and future damage to her reputation, and past and future lost wages and lost earning capacity. Plaintiff has suffered at least anxiety, fear, shame, anger, and depression due to Defendants' actions.

89.    Plaintiff also seeks damages as a result of Defendants' actions and conduct that have impinged on rights guaranteed by the First Amendment, such as Plaintiff's right to free speech, and to association. Conditions placed on Plaintiff's bond have deprived Plaintiff of rights guaranteed by the Constitution. It was entirely foreseeable to Defendants that falsely arresting and charging Plaintiff with a criminal offense for which probable cause was lacking would lead to these constitutional deprivations and damages.

90.    Plaintiff also seeks damages for the costs she incurred in having to post bail and defend against the false criminal charges filed against her.  Those costs include the money she paid for legal representation.

91.    Plaintiff also seeks exemplary damages against each individual Defendant of at least $100,000,000--$1,000,000 for each of the first 100 innocent individuals and their families who have suffered and had their entire lives ruined by the Defendants' actions by being falsely arrested and jailed, saddled with a unjust $1,000,000.00 bond, falsely prosecuted for, so far, 22 months and publicizing accusations of being involved in mass murder throughout the World.

92.    Plaintiff has retained the services of the undersigned counsel, and claims entitlement to an award of reasonable and necessary attorney's fees under 42 U.S.C. § 1983 and 1988.

## VII. JURY DEMAND

93.    Plaintiff respectfully requests a trial by jury.


## PRAYER FOR RELIEF

94.    For these reasons, Plaintiff seeks a judgment against Defendants for: compensatory and actual damages in an amount deemed sufficient by the trier of fact; exemplary damages; attorney's fees and expenses pursuant to 42 U.S.C. §§ 1983 and 1988; costs of court; and interest allowed by law for prejudgment or post-judgment interest.


Respectfully submitted,
**KALLINEN LAW PLLC**

_/S/ Randall L. Kallinen_
Randall L. Kallinen
State Bar of Texas No. 00790995
Southern District of Texas Bar No.: 19417
Admitted, U.S. Supreme Court, 5th U.S. Circuit Court of Appeals
        and U.S. Southern, Western and Eastern Districts of Texas
511 Broadway Street
Houston, Texas 77012
Telephone:    713.320.3785
FAX:            713.893.6737
Email:          AttorneyKallinen@aol.com

/s/ Paul C. Looney
Paul C. Looney, Co-counsel
**LOONEY & CONRAD P.C.**
Stata Bar of Texas Bar No.: 12555900
918 Austin Street
Hempstead, Texas 77455
Telephone:    979.826.8484
FAX:            281.597.8284
Email:          info@looneyconrad.com